IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA, for the use of
ASPHALT CONTRACTORS, & SITE WORK, INC.,
a Kentucky corporation,,

      Plaintiff,

v.           CIVIL ACTION NO. 3:14-27451

KAR CONTRACTING, LLC,
a West Virginia limited liability company and
GREAT AMERICAN INSURANCE COMPANY,
an Ohio corporation,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' Joint Motion for Summary Judgment (ECF No. 46) and Defendants' Supplemental Joint Motion for Summary Judgment (ECF No. 48). The Court orally granted these motions at the November 23, 2015 pretrial conference. In deciding to grant the motions, the Court considered the motions, the response, and the reply, as well as it heard argument on the motions by counsel. This Memorandum Opinion and Order sets forth the reasons for **GRANTING** Defendants' motions.

      **I.**  **Background**

Defendant KAR Contracting, LLC ("KAR") was the prime contractor on a project completed in Huntington, WV for the United States Department of Veterans Affairs ("VA"). *Compl.*, ECF No. 1. Defendant Great American Insurance Company ("Great American") is the surety on the prime contract between KAR and the government. *Id.* According to the Complaint,

KAR subcontracted with Plaintiff Asphalt Contractors & Site Work, Inc. ("Asphalt") "to perform, among other things, asphalt resurfacing, construction of a new haul road, concrete steps, and demolition of an existing pump station." *Id.* Asphalt alleges that it fully performed all obligations under the subcontract but that KAR has failed to pay for some of the work, labor, and materials provided by Asphalt under the contract. *Id.* Specifically, Asphalt states that more asphalt was required than was initially estimated and included in the subcontract. *Id.* Asphalt claims that KAR and the VA agreed to additional amounts of asphalt and labor, but KAR has refused to pay for these additional amounts under the altered subcontract. *Id.* Asphalt alleges that it billed KAR $118,274.05, which KAR has refused to pay. *Id.* As a result, Asphalt sued KAR and Great American for breach of contract, breach of payment bond pursuant to the Miller Act, *quantum meruit*, and violation of the Prompt Payment Act. *Id.*

KAR and Great American moved to dismiss the complaint on November 26, 2014. ECF No. 8. On June 11, 2015, the Court granted the motion to dismiss in regards to the Prompt Pay Act claim, leaving only Asphalt's claims for breach of contract, breach of the payment bond, and *quantum meruit* claim. ECF No. 20. KAR and Great American now move for summary judgment asserting that Asphalt's suit under the Miler Act is time-barred and because there are no genuine issues of material fact regarding Asphalt's breach of contract, breach of payment bond, and *quantum meruit* claim, KAR and Great American are entitled to summary judgment. ECF No. 46.

## II. Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### III. Discussion

The situation at hand is a textbook example of a unilateral mistake, made by the Plaintiff. Although it is unfortunate that the Plaintiff will have to bear the extra costs assumed in supplying additional asphalt and labor, there is no getting around the facts that this was a mistake made by Asphalt and that Defendants had no notice that a mistake had been made. As such, there is no legal basis for holding Defendants accountable and Defendants are entitled to judgment as a matter of law. In order to understand the Court's conclusion, as closer examination of the facts must be had.

As noted previously, KAR was the prime contractor on a project that was to be completed in Huntington. *Compl.*, ECF No. 1. Prior to submitting a bid for this project, KAR elicited a proposal for the paving work from Asphalt, and provided a link to the VA website where Asphalt could download the Project specifications and drawings. *Defs' Mem. in support of Mot. for Summ. J.* Ex. 2, at 19–20, ECF No. 46. Asphalt printed the Project specifications and drawings. *Id.* These

included a "Title Sheet & General Notes," designated T-1, which contained an "Index to Drawings," noting the four drawings for the Project. *Defs' Mem. in support of Mot. for Summ. J.* Ex. 1, ECF No. 46. The two pertinent drawings for this lawsuit are C-1 and C-2.

The first drawing, C-1, was clearly designated for "Pavement Resurfacing & Curb Replacement," and provided a scaled drawing for the entire Project area designated for pavement resurfacing and curb replacement, including a parking area adjacent to a parking garage. *Defs' Mem. in support of Mot. for Summ. J.* Ex. 3, ECF No. 46. The drawing C-2 was clearly designated for "Road and Parking Lot Pavement Marking," and provided scaled drawings for the parking areas to be striped after paving was completed. *Defs' Mem. in support of Mot. for Summ. J.* Ex. 4, ECF No. 46. It was later determined by the VA that the C-2 drawing had not been correctly drawn to scale. *Defs' Mem. in support of Mot. for Summ. J.* Ex. 38, ECF No. 46.

After downloading these drawings and taking field measurements, Asphalt submitted a written proposal to KAR on June 17, 2013 of $451,873 for "Milling and Re-paving areas on designated drawing," consistent with the C-1 drawing which designated the areas to be paved and curbed, and of $10,000 for "Restriping all existing parking, curb, roadway, and hashing, as specified in drawing," consistent with the C-2 drawing which designated the areas to be striped. *Defs' Mem. in support of Mot. for Summ. J.* Ex. 7, ECF No. 46. Based on Asphalt's quote, KAR was awarded the bid and work on the project proceeded thereafter. *Defs' Mem. in support of Mot. for Summ. J.* Ex. 8, 11, ECF No. 46.

On the morning of September 4, 2013, however, an Asphalt employee supervising the paving process discovered that he had an insufficient amount of asphalt to complete the paving of the parking lot adjacent to the parking garage depicted on C-1. *Defs' Mem. in support of Mot. for Summ. J.* Ex. 16, at 12–13, 46–48, ECF No. 46. Asphalt's management advised him to order more

asphalt to complete the work. *Id.* at 46–48. Later, after Asphalt had already made the decision to order and install additional asphalt, Asphalt's management came to the parking lot and conducted field measurements in an attempt to ascertain why it had not ordered enough asphalt. *Defs' Mem. in support of Mot. for Summ. J.* Ex. 18, at 62–63, ECF No. 46. Asphalt has since determined that its asphalt calculation was short because it incorrectly used the C-2 striping drawing designated, "Road and Parking Lot Pavement Marking," which was drawn to a scale of 1:50, instead of using the correct paving drawing, C-1, designated "Pavement Resurfacing & Curb Replacement." *Pl's Resp. in Opp'n to Defs' Mot. for Summ. J.*, at 5, ECF No. 49. As noted before, the C-2 drawing was later determined to be incorrect regarding its scaled measurements. Therefore, in relying on the incorrect drawing for the pavement resurfacing work, Asphalt calculated and ordered the wrong amount of asphalt.

Asphalt's management then met with KAR and it was decided that KAR would submit a claim to the VA on Asphalt's behalf based upon the fact that the C-2 striping drawing was not properly drawn to scale and that Asphalt had used C-2 in preparing its proposal to Asphalt. *Defs' Mem. in support of Mot. for Summ. J.* Ex. 20, at 65, ECF No. 46. The Project was later completed on October 5, 2013. *Defs' Mem. in support of Mot. for Summ. J.* Ex. 25, ECF No. 46.

By email dated October 16, 2013, Asphalt emailed KAR an invoice in the amount of $153,000 dated August 19, 2013, for curb work and milling done prior to the paving; an invoice in the amount of $238,998 dated September 10, 2013; and an invoice in the amount of $69,875 dated October 11, 2013, designated "Remaining Contract Amount." *Defs' Mem. in support of Mot. for Summ. J.* Ex. 26, ECF No. 46. The total of these was $461,873, the full amount of the subcontract. *Defs' Mem. in support of Mot. for Summ. J.* Ex. 7, ECF No. 46. KAR made its payment of Asphalt's "Remaining Contract Amount" by check dated October 31, 2013. *Defs'*

*Mem. in support of Mot. for Summ. J.* Ex. 27, ECF No. 46. As such, KAR paid Asphalt the entire amount of $461,873 under the parties' written contract.

    A. <u>Statute of Limitations</u>

Defendants first argue that Plaintiff's suit is time-barred under the Miller Act. The Miller Act is a statute that provides a cause of action for a subcontractor who supplies labor and materials for a project but is not timely paid under its contract. *See* 40 U.S.C. § 3133 (2012). The Miller Act provides: "An action brought under this subsection must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." *Id.* § 3133(b)(4). The statute of limitations begins to run after the last day on which any material or labor was provided for the project, not the last day on which the material or labor in dispute was provided. *See GE Supply v. C & G Enters., Inc.*, 212 F.3d 14, 18 (1st Cir. 2000).

Defendants argue that Asphalt submitted a final invoice dated October 11, 2013, designated "Remaining Contract Amount" and that Asphalt submitted no other invoices for work performed or materials supplied after October 11, 2013. *Defs' Mem. in support of Mot. for Summ. J.*, at 11, ECF No. 47. Asphalt did not filed its suit until October 31, 2014. *Compl.*, ECF No. 1. Because the suit was filed a year after Plaintiff submitted its last invoice, KAR claims Plaintiff is time-barred under the Miller Act.

However, Plaintiff contends that these documents and invoices relied on by the Defendants do not indicate the true date on which the last labor was performed by the Plaintiff. Plaintiff claims the last date that work was performed was November 20, 2013, when an Asphalt employee last recorded "clear[ing] inlet of debris." *Pl's Resp. in Opp'n to Defs' Mot. for Summ. J.* Ex. 1, ECF. No. 49. Plaintiff's representative, Leston Followay, explained this additional work in response to

questioning by Defendants' attorney, indicating that there were items that Plaintiff had to return to the worksite to complete after the October 11, 2013 date such as "cleanups", replacing bumper blocks that were cracked, cleaning out inlets, etc. *Pl's Resp. in Opp'n to Defs' Mot. for Summ. J.* Ex. 2, at 69, 71, ECF No. 49. Ken Reynolds, principal of KAR, also confirmed in his sworn deposition:

> Q: Okay. All right. So you're telling the government as of November 27, 2013, no matter what, that the paving is ninety-nine percent complete. Aren't you?
>
> A: Yeah, by that date it was ninety-nine percent complete. The whole project was.

*Pl's Resp. in Opp'n to Defs' Mot. for Summ. J.* Ex. 4, at 79, ECF No. 49. Mr. Reynolds also testified that, by invoice dated November 27, 2013, KAR certified to the Federal Government that the asphalt paving work being performed by the Plaintiff was not yet completed. *Pl's Resp. in Opp'n to Defs' Mot. for Summ. J.* Ex. 3, ECF No. 49.

As such, this information indicates there is a factual dispute as to the last date upon which "labor was performed or material was supplied" under the Miller Act statute of limitations. 40 U.S.C. § 1333(b)(4). This genuine issue of material fact precludes the granting of summary judgment on statute of limitations grounds. Defendants' motion is **DENIED** as to the statute of limitations defense.

B. Breach of Contract and Breach of Payment Bond Claims

Defendants are entitled to summary judgment regarding Plaintiff's claims for breach of contract and breach of payment bond for two reasons. First, Plaintiff conceded KAR paid Asphalt the full contract amount of $461,873.00 with the last installment paid by check on October 31, 2013. *Pl's Resp. in Opp'n to Defs' Mot. for Summ. J.*, at 5, ECF No. 49. Second, Plaintiff also conceded there was no oral modification of the written contract, (*Id.*), nor has it identified any evidence regarding the formulation of any other contract between the parties. By conceding these

facts, Plaintiff has failed to produce evidence sufficient to support essential elements of these causes of action,[1] namely that Defendant breached the written contract between the parties or that the Defendants failed to pay Plaintiff the amount due, as determined in the written contract.

Plaintiff cites two cases, *W.F. Magann Cooperation v. Diamond Mfg. Co.*, 775 F.2d 1202 (1984) and *Miller v. Guy H. James Constr. Co.*, 653 P.2d 221 (1982), in support of its argument that because the plans provided to Plaintiff were inaccurate, Defendants should not be granted summary judgment. The Court finds this unpersuasive for several reasons. First, the two cases relied on by Plaintiff turned on the fact that the defective specifications were expressly incorporated into the subcontract. Here, the specifications were never incorporated by reference. Second, the drawing labeled C-1, which should have been relied upon by the Plaintiff, was clearly marked "Pavement Resurfacing and Curb Replacement" and contained <u>correct</u> measurements/scales. Therefore, if C-1 (instead of C-2) had been used by the Plaintiff as directed, there would have been no error in calculation. Finally, Asphalt admits that it had an obligation to review plans and specifications before submitting its proposal to KAR, that KAR did nothing to prevent it from seeking clarification regarding the Project plans and specifications, and that is never inquired of the VA prior to submitting its proposal to KAR regarding the Project plans and specifications. *Defs' Mem. in support of Mot. for Summ. J.* Ex. 21, at 15–16, ECF No. 46. As such,

---

[1] The Miller Act requires any contractor that has a construction contract with the federal government of more than $100,000 to insure that contract with a payment bond. 40 U.S.C. § 3131 (2012). The Act further provides that any subcontractor who has furnished labor or materials under such a contract and has not been paid within ninety days after its work is complete may bring a civil action on the payment bond to recover the amount due. 40 U.S.C. § 3133 (2012). Thus "a plaintiff properly pleads a Miller Act claim where it alleges (1) it has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131; and (2) it has not been paid in full within 90 days." *Oldcastle APG Northeast, Inc. v. Suffolk Const. Co.*, No. 1:12cv148, 2012 WL 5868897 (E.D. Va. Oct. 21, 2012) (internal quotations omitted).

the facts here are distinguished from *Magann* and *Miller* and Plaintiffs have failed to offer "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256.

Therefore, there is no genuine issue as to any material fact and Defendants are entitled to summary judgment on these claims. Defendants' motion is **GRANTED** as to Plaintiff's claims for breach of contract and breach of payment bond.

### C. *Quantum Meruit* Claim

In Plaintiff's final count, it claims that "to the extent that the subcontract between the parties is based upon inaccurate/incorrect information, there is no agreement as to quantity of work and the price thereof" (*Pl's Resp. in Opp'n to Defs' Mot. for Summ. J.*, at 8, ECF No. 49) and therefore Plaintiff should be able to proceed on a *quantum meruit* claim. In other words, Plaintiff argues that an implied contract can exist between the parties because the original express contract is void (due to the unilateral mistake Plaintiff made in using the wrong drawing to base its bid calculations). Again the Court finds this unpersuasive. This is because a unilateral mistake made in the formation of an express contract cannot support a *quantum meruit* claim. Pursuant to Section 153 of the Restatement (Second) of Contracts:

> Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performance that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake . . . . and (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or (b) the other party had reason to know of the mistake or his fault caused the mistake.

Restatement (Second) of Contract § 153 (Am. Law Inst. 1981).

Here, Plaintiff has admitted that it had an obligation to review the plans and specifications prior to submitting its proposal to KAR (*Defs' Mem. in support of Mot. for Summ. J.* Ex. 21, at 15–16, ECF No. 46) and that it used drawing C-2, designated for striping, rather than drawing C-

1, designated for paving (*Pl's Resp. in Opp'n to Defs' Mot. for Summ. J.*, at 5, ECF No. 49). Moreover, there is no evidence that KAR was aware of Plaintiff's use of the wrong drawing, that C-2 was not properly scaled prior to execution of the subcontract, or that any fault on the part of KAR caused the mistake. Upon examination of the documents submitted by Asphalt to KAR, Asphalt never references which drawing or scale it used in determining its bid for the paving portion of the contract. As such, KAR had no reason to know of the mistake made by Asphalt.

Similarly, enforcement of the contract between KAR and Asphalt would not be unconscionable in this case. As noted in the Restatement:

> If the mistake is discovered and the other party notified before he has relied on the contract, avoidance by the mistaken party deprives the other party only of his expectation, the "benefit of the bargain." If, however, the other party has relied on the contract in some substantial way, avoidance may leave that reliance uncompensated. In such a case, enforcement of the contract would not be unconscionable . . . .

Restatement (Second) of Contracts § 153 cmt. d (Am. Law Inst. 1981). Here, KAR was not notified of the mistake until after the additional asphalt was ordered and Asphalt had an opportunity to take measurements regarding why its initial estimate was off. *Defs' Mem. in support of Mot. for Summ. J.*, at 3–5, ECF No. 47. Therefore, KAR did not have the opportunity to 'avoid' the mistake. Additionally, KAR relied on the mistake in a substantial way, in accepting Asphalt's bid and completing the project within the total contract price. In this case, refusing to enforce the contract because of Asphalt's mistake would leave KAR uncompensated. Consequently, as a matter of law, Plaintiff is not entitled to relief from its own unilateral mistake.

Furthermore, *quantum merit* claims sound entirely in equity, meaning that one must be 'without fault' before equitable relief is available. *Hill Holliday Connors Cosmopulos, Inc. v. Greenfield*, No. 10-1435, 2011 WL 2160642, at *8 (4th Cir. June 2, 2011) ("Quantum meruit, quasi-contract, and implied by law contract are synonymous terms for an equitable remedy.")

(citation omitted); *see Abramson ex rel. Estate of Abramson v. Laneko Eng'g Co.*, 370 F. Supp. 2d 498, 499 (S.D.W. Va. 2005) ("If the contracts between attorney and client be broken <u>without fault on the part of the attorney</u>, he may recover damages for breach, or on quantum meruit . . . .") (emphasis added and citation omitted). "Such an award is appropriate when one party has been unjustly enriched by the actions of another." *Omni Jet Trading, Inc. v. Heerensperger*, Nos. 96-1365, 96-1426, 1997 WL 543381, at *2 (4th Cir. Sept. 5, 1997). Here, as previously discussed, Plaintiff made a unilateral mistake by using the wrong drawing upon which to base its bid calculations. Therefore, Plaintiff is at fault. Additionally, Defendants were not unjustly enriched by the actions of Plaintiff. KAR received the paving work it contracted out to Asphalt for the price submitted by Asphalt. As such, because Plaintiff is at fault and Defendants were not unjustly enriched, Plaintiff is precluded from pursing equitable relief in the form of a *quantum meruit* claim.

Therefore, Defendants' motion is **GRANTED** as to Plaintiff's *quantum meruit* claim.

### IV. Conclusion

For the foregoing reasons, Defendants' Joint Motion for Summary Judgment (ECF No. 46) and Defendants' Supplemental Joint Motion for Summary Judgment (ECF No. 48) are **GRANTED.**

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: December 4, 2015

_____
ROBERT C. CHAMBERS, CHIEF JUDGE